*In re* ESTATE OF WALTER W. SALZMAN, Deceased—(HAZEL ZOCHERT ORELUP, a/k/a HAZEL ORELUP *et al.*, Petitioners-Appellants, *v.* HAZEL ORELUP *et al.*, Respondents-Appellees.)

(No. 58477;

First District (5th Division)—January 18, 1974.

Robert E. Grundin, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner and Paul P. Biebel, Jr., Assistant State's Attorneys, of counsel), for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal taken from an order denying the will of Walter Salzman to probate. The three page holographic will bequeathed assets approximating $20,000 to the petitioners herein. The effect of the trial court's ruling resulted in one-half of the estate escheating to the county with the remainder distributed to some 30 cousins of the decedent. On appeal the County of Cook has filed the only respondent brief.

The will in question was drafted by decedent and witnessed by Ida Douglas and Rose Wright on December 6 and 7, 1970, respectively. Salzman subsequently died on June 5, 1972. Pursuant to section 62 of the Probate Act (Ill. Rev. Stat. 1971, ch. 3, par. 62), the executor of the will petitioned to admit the will to probate. No objections were made to the probate of the will, nor was there any evidence of fraud, forgery, compulsion or other improper conduct.

At the hearing, Ida Douglas testified that she was summoned to the decedent's residence and asked to sign his will. She neither saw the decedent sign the instrument, nor did she recall seeing his signature. She did, however, testify that decedent expressly acknowledged the instrument to be his will. Rose Wright testified that she too signed the instrument in the presence of the decedent. However, petitioners claim that her testimony was inconsistent in respect to the decedent's proper acknowledgment of the will as his act. The court, apparently as a result of this testimony, denied admittance of the will. Pertinent parts of Rose Wright's testimony are set out below.[1]

Petitioners filed a post-trial motion seeking to vacate the order denying admission of the will; or to retry or rehear the issues; or to have an order

---

[1] Report of Proceedings, September 11, 1972.

"Q. Mrs. Wright, I show you a document purporting to be the last will and testament of Walter W. Salzman and ask you if it bears your signature?
A. Yes, it does.
Q. At whose request did you sign the document?
A. Mr. Salzman.
Q. For what purpose?
A. For his will, I guess.
        *   *   *
Q. Did he tell you what it was?
A. He told me it was his will.
        *   *   *
Q. Did he acknowledge to you that this was his will at that time and place?
A. No, he didn't say that directly it was his will.
Q. The circumstances were such that you believed it to be his last will?
A. Yes."

admitting the will to probate. After denial of this motion and pursuant to section 329 of the Probate Act (Ill. Rev. Stat. 1971, ch. 3, par. 329) petitioners perfected this appeal.

Petitioners assert that decedent properly acknowledged to Rose Wright that the instrument she was signing was his will and, because the signatures were valid, there is a presumption of due execution and attestation. Conversely, the respondents assert that petitioners have not complied with the requirements necessary to admit a will to probate: specifically, that the decedent failed to sign his will or acknowledge it as his act in the presence of his witness, Rose Wright.

OPINION

■■■ In order to allow admittance of a will to probate there must be compliance with section 69 of the Probate Act (Ill. Rev. Stat. 1971, ch. 3, par. 69):

"When each of two attesting witnesses to a will testifies before the court (a) that he was present and saw the testator or some person in his presence and by his direction sign the will in the presence of the witness or that the testator acknowledged it to the witness as his act, (b) that the will was attested by the witness in the presence of the testator, and (c) that he believed the testator to be of sound mind and memory at the time of signing or acknowledging the will, the execution of the will is sufficiently proved to admit it to probate unless there is proof of fraud, forgery, compulsion, or other improper conduct which in the opinion of the court is deemed sufficient to invalidate or destroy the will. The proponent may also introduce any other evidence competent to establish a will in chancery. If the proponent establishes the will by sufficient competent evidence it shall be admitted to probate unless there is proof of fraud, forgery, compulsion, or other improper conduct which in the opinion of the court is deemed sufficient to invalidate or destroy the will."

These legislative directives are mandatory. As stated in *Ruffing v. Glissendorf*, 41 Ill.2d 412, 420, 243 N.E.2d 236:

"It has long been recognized that the proof necessary to entitle a will to probate is confined to the essential elements fixed by the statute (section 69 and its predecessors) and is for the purpose of establishing whether a *prima facie* case of validity has been made. [Citations.]"

The burden of proof in establishing the validity of the proffered will is upon the proponent of the will. (*In re Estate of Thomas*, 6 Ill.App.3d 70, 284 N.E.2d 513; *In re Estate of Willavize*, 21 Ill.2d 40, 171 N.E.2d 21.) However, it is not the duty of the proponent to show that the will is

valid in all respects; it is his duty only to prove the essential elements included in the statute. *In re Estate of Lewicki*, 282 Ill.App. 192.

Petitioner correctly states that the court will indulge every reasonable presumption in favor of the execution and attestation of a will in order to uphold the validity of an apparently properly executed document. This is true even in the absence of witness recollection as to what transpired during the attestation of the will. As stated in *Conway v. Conway*, 14 Ill.2d 461, 466, 153 N.E.2d 11:

> "The probate of a will cannot be made to depend upon the recollection or veracity of subscribing witnesses, for if it were necessary for them to remember and testify to the fact that all the prescribed formalities were in fact complied with very few wills could be upheld."

The above presumption, however, has as a basis the fact that a formalized attestation clause was signed by a witness. Thus, even if his recollection is faded, the attestation clause speaks authoritatively for his actions.[2] See also, *Brelie v. Wilkie*, 373 Ill. 409, 412, 26 N.E.2d 475, where it was stated:

> "Where the attestation clause is in due form and the will bears the genuine signatures of the testatrix and the subscribing witnesses, it is *prima facie* evidence of the due execution of the will; and this *prima facie* case is not overcome by the mere fact that the subscribing witnesses testify they failed to notice whether the will was signed or not, and cannot remember whether they saw the signature."

Furthermore, it is not indispensible to a proper attestation that the testator sign in the presence of the witnesses; nor is it essential that the witnesses see the signature of the testator upon the face of the will, or even that they know the instrument they are witnessing is a will. The statutory requirement is satisfied if the testator acknowledges the execution of the will. (*Bronson v. Martin*, 384 Ill. 129, 51 N.E.2d 149; *Brelie v. Wilkie, supra.*) In making such an acknowledgement it is not necessary that the testator call the instrument a will, or that he utter some verbal declaration. Any act, sign or gesture will suffice which indicates an acknowledgment of the instrument with unmistakable certainty. *Conway v. Conway, supra.*

---

[2] As stated in the early case of *Gould v. Chicago Theological Seminary*, 189 Ill. 282, 289:

> "'The precise force which should be accorded to a full attestation clause regularly authenticated is not very clearly defined in the cases, but they all agree in the conclusion that it is entitled to great weight in the determination of the question of fact involved.'"

In response to questioning, Rose Wright testified that the circumstances were such that she believed she was signing Salzman's will and we believe that, although there is some inconsistency in her testimony, sufficient evidence was produced which indicated that Salzman acknowledged his act.

The signatures of the witnesses here were preceded by the word "witnesses" and it has been held that it is not indispensable to the valid execution of a will that the witness sign a formal clause of attestation. The attestation clause may consist of a single word, as "witness", "attest", or "test", or there may be no words at all. *Glos v. Schildbach*, 344 Ill. 23, 176 N.E. 65; *Robinson v. Brewster*, 140 Ill. 649.

Moreover, cases have held that even where no attestation clause was present and the witness had no recollection of the attestation, the will was found to be properly executed and attested. See *Mead v. Trustees of the Presbyterian Church*, 229 Ill. 526, 530, 531, 532, 82 N.E. 371, where the court, in discussing its case in relation to an earlier one, stated:

> "In the *Thompson case, supra,* neither of the attesting witnesses could remember that he had witnessed the will or that the testator had signed the will or acknowledged its execution in his presence. It was, however, held the will was entitled to be admitted to probate. The only substantial difference between this case and the *Thompson case* is, that in that case there was an attestation clause attached to the will which recited all the facts necessary to show a legal execution of the will, which is not the case here. In this case, however, the witness Boswell wrote immediately after his name the word 'witness,' which shows clearly he understood that he was witnessing the execution of the instrument which he had signed as a witness, * * *. It was not necessary that a formal attestation clause reciting all the facts necessary to a correct execution of the will be added to the instrument to make it a valid will. [Citations.]
>
>        * * *
>
> In this case, while there was no attestation clause attached to the instrument reciting all the acts necessary to be done that the will might be legally executed, we think the evidence found in this record clearly supplies the presumption arising from the presence of an attestation clause, and that there can be no question in the unbiased mind but that the instrument admitted to probate was duly executed by Mead Holmes as and for his last will, in the presence of Boswell and Paul, who signed the same as attesting witnesses. The instrument was in the handwriting of Mead Holmes. It was therefore impossible that a spurious will was

foisted upon him. It was found among his private papers after his death, duly signed and witnessed, which showed he considered it a valid will."

In *Knaphurst v. Lindauer*, 61 Ill.App.2d 269, 210 N.E.2d 23, one of the witnesses to a holographic will, absent an attestation clause, failed to remember the circumstances surrounding the signing of the will. The court, citing *Mead, supra,* and *Loomis v. Campbell,* 333 Ill.App. 617, 78 N.E.2d 143, affirmed the trial court's admittance of the will to probate.

We feel that the facts and circumstances of the instant case lend themselves to a conclusion consistent with the above holdings. Clearly, Salzman desired to execute a will and there is no doubt that all the signatures thereon are genuine. Moreover, there was claim made of fraud, duress, forgery or compulsion. There is no question that the witness, Ida Douglas, was asked by decedent to sign his will and that he had expressly acknowledged that the instrument she was signing was his will. Further, the circumstances were such that Rose Wright believed the instrument she was signing was decedent's will and, as hereinbefore noted, conduct is sufficient indicia of acknowledgment. As aptly stated in *Mead v. Trustees of Presbyterian Church,* at page 532:

"To lay down as a rule of law that the failure of the attesting witnesses to recollect all the facts surrounding the execution of a will would defeat its probate, would be, in many instances, to defeat the probate of wills where there is no reasonable question but that they were executed by the testator or testatrix with all the formalities required by law, which is in conflict with the decisions of this and many other courts of last resort. [Citations.]"

As stated in *In re Estate of Wise,* 9 Ill.App.3d 20, 23, 24, 291 N.E.2d 292:

" 'Since the amendment to Section 329 of the Probate Act (Ill. Rev. Stat. 1963, Ch. 3, Sec. 329) an appeal from an order denying probate to a will is governed by the same principal as other civil appeals in reviewing alleged errors of the trial court * * *. A judgment will be reversed on appeal if it is manifestly against the weight of the evidence.' "

In light of the above cases we conclude that the findings of the trial court were against the manifest weight of the evidence. Therefore, the order of the trial court is reversed and the cause remanded with directions that the trial court enter an order admitting the will to probate.

Reversed and remanded with directions.

DRUCKER and LORENZ, JJ., concur.