Per Curiam.
 

 In this appeal, we are asked to determine whether the testator’s third codicil was properly admitted to probate where the testator’s brother—one of the two subscribing witnesses to the codicil—testified against its admission, disavowing the recitations of the codicil’s attestation clause. We conclude that the codicil was properly admitted to probate.
 

 In September 1985, Percy Lee Clark executed his last will and testament. The will made various specific devises, including a $10,000 cash devise to Kevin Watmuf, and devised equal shares of the residue of the estate to the testator’s surviving siblings. During the next ten years, the testator executed three codicils to his will. The provisions of the first codicil, executed. in June 1988, are not pertinent to this appeal. The second codicil, executed in October 1992,
 
 *389
 
 granted to Watmuf the first option to purchase from the estate the testator’s automobile salvage business. The third codicil, executed in April 1995, revoked the second codicil as well as the cash devise to Watmuf and, instead, devised the automobile salvage business outright to Watmuf. The third codicil was signed by the testator and two witnesses—William Ray Clark (the testator’s brother and a beneficiary under the 1985 will) and John E. Stover—whose signatures were preceded by an attestation clause, which stated:
 

 The foregoing instrument was, at the date thereof, subscribed by Percy Lee Clark, the Testator, and we, the undersigned, each witnessed the above Testator sign his name to the foregoing instrument and each witnessed his acknowledgment that the foregoing instrument is his Third Codicil to his Last Will and Testament, heretofore executed on April 3, 1995; and we do hereby certify that, at the time of the execution of his Third Codicil the said Percy Lee Clark was of sound and disposing mind, memory and understanding.
 

 On August 2, 1997, Percy Lee Clark died, survived by nine siblings. In the few weeks preceding his death, Percy Clark had retained an attorney to draft a new will,
 
 [1]
 
 however, because he died before properly executing the will, the probate court denied its admittance to probate. Thereafter, Watmuf filed a petition to admit to probate the decedent’s 1985 will and first and third codicils. At the hearing, Watmuf submitted an affidavit of the attorney who had drafted the 1985 will and called William Ray Clark, a subscribing witness to the third codicil; to testify. William testified, contrary to the recitations in the codicil’s attestation
 
 *390
 
 clause, that he had not witnessed the decedent sign the document and that no other signatures appeared on the document when he signed it. He acknowledged that the signature was that of the decedent. He also testified that he did not read the document. On cross-examination, William reiterated that he did not see the decedent sign the document, did not see subscribing witness Stover sign the document, and did not read the document that he signed. William testified that the decedent “just wanted to know if I’d be a witness. So, I just signed the papers. I figured he was my brother, I could—I ought to be able to trust him.” On redirect examination, William testified that he could recognize his brother’s signature and there was no doubt in his mind that the signature on the codicil was that of Percy Clark.
 

 John Stover, the attorney who drafted all three codicils, and a subscribing witness to the third codicil, was not called to testify at the probate proceedings.
 

 The probate court admitted into probate the decedent’s 1985 will and first and third codicils, noting with respect to the third codicil that, although some questions were raised by William Clark’s testimony whether the codicil was properly executed, “it appears to comply with the statute.” The court also appointed a personal representative of the estate, who filed this appeal, challenging the admission to probate of the third codicil.
 

 The execution requirements of a will or codicil
 
 [2]
 
 are set forth in MCL 700.122(1); MSA 27.5122(1), which provides in pertinent part:
 

 
 *391
 
 A will shall be in writing signed by the testator or in the testator’s name by some other person in the testator’s presence and by his direction and shall be signed by at least 2 persons each of whom witnessed either the signing or the testator’s acknowledgment of the signature or of the will. If the witnesses are competent at the time of signing the will, their subsequent incompetency, from whatever cause, shall not prevent admission of the will to probate, if it is otherwise satisfactorily proved.
 

 Section 122 is derived from the Uniform Probate Code § 2-502.
 
 In re Mikeska Estate,
 
 140 Mich App 116, 124; 362 NW2d 906 (1985). The comment to § 2-502 provides “that the intent is to validate wills which meet the minimum formalities of this state.”
 
 Id.
 
 The requirement that a will be witnessed is intended
 

 to assure a means of verifying the testamentary capacity of the testator, to assure that there is no uncertainty as to the execution of the will, and to assure sufficient formality which impresses on the testator the importance of the disposition of the property which he makes by means of the will.”
 
 [In re Bilivskoy Estate,
 
 147 Mich App 110, 113; 382 NW2d 729 (1986), citing 94 CJS, Wills, § 183, p 994.]
 

 The probate court “may admit the will of a resident testator to probate on the testimony of 1 of the subscribing witnesses if the witness shall testify that the will was executed in all particulars as required by law.” MCL 700.147(1); MSA 27.5147(1). Here, the only statutory requirement seriously challenged is whether William Clark witnessed the testator’s acknowledgment of the codicil. The mere fact that William testified that he did not read the document before signing it and that his brother did not specifically tell him that the document was a codicil to his will is insufficient to defeat its admission to probate. “Publication
 
 *392
 
 of a will, defined as ‘the act of making it known, in the presence of witnesses, that the instrument to be executed is the last will and testament of the testator,’ with the strict observance of specific formalities imperative in many jurisdictions, is not required in this State.”
 
 In re Kohn’s Estate,
 
 172 Mich 342, 348; 137 NW 735 (1912). See also
 
 In re Thomas’ Estate,
 
 243 Mich 566, 569; 220 NW 764 (1928). Here, according to William Clark’s testimony, Percy Clark showed the document to him and asked him to sign it as a witness. William did so because he trusted his brother. While it may have been better practice for Percy Clark to expressly acknowledge to William that the document was testamentary in nature, or for William to read, at a minimum, the attestation clause directly above the witness signature line, neither of these occurrences is mandated by statute. Instead, recognizing that the intent is to validate wills that meet the minimum statutory formalities,
 
 Mikeska, supra
 
 at 124, substantial compliance with the statutory requirements, as occurred here, is sufficient.
 
 Kohn, supra; In re Dougherty’s Estate,
 
 168 Mich 281, 288; 134 NW 24 (1912).
 

 Moreover, although Michigan does not require a formal attestation clause in a will, see
 
 In re Dodson Estate,
 
 119 Mich App 427, 429; 326 NW2d 532 (1982), the presence of such a clause gives rise to a presumption that the will was executed in conformity with the recitations in the clause.
 
 Utley v First Congregational Church,
 
 368 Mich 90, 102; 117 NW2d 141 (1962);
 
 In re Dalton Estate,
 
 346 Mich 613, 624; 78 NW2d 266 (1956). This presumption may be rebutted by the competent testimony of witnesses.
 
 In re Amson Estate,
 
 2 Mich App 478, 486; 140 NW2d 546 (1966).
 
 *393
 
 However, the sworn testimony of a subscribing witness that contradicts the plain language of an attestation clause will not necessarily be sufficient to rebut the presumption that the will was properly executed.
 
 Utley, supra
 
 at 101-103;
 
 In re Dettling Estate,
 
 351 Mich 335; 88 NW2d 252 (1958);
 
 Dougherty, supra
 
 at 293-294.
 

 For example, in
 
 Dettling, supra,
 
 the testator’s will contained an attestation clause declaring that she signed her last will and testament in the presence of the subscribing witnesses and the witnesses signed in the presence of the testator and each other. The two subscribing witnesses—the testator’s sister and brother-in-law—testified that, contrary to the attestation clause, they did not sign in the testator’s presence, they signed the document at the request of the testator’s husband, and they were unaware of the testamentary nature of the document.
 
 Id.
 
 at 336-337. On the basis of this testimony, the probate court refused to admit the will to probate. After an appeal, the matter was placed before a jury, which found that the will was subscribed by the witnesses in the presence of the testator, and that it should be admitted to probate. The trial court granted the contestant’s motion for judgment notwithstanding this verdict, despite having found that the testator’s sister was an interested witness who stood to gain by the defeat of the will and her demeanor was not credible. The trial court ruled, nonetheless, that her testimony established that the will was not executed in accordance with the statute.
 
 Id.
 
 at 337-338. The Michigan Supreme Court, in construing 1948 CL 702.5, the predecessor of MCL 700.122; MSA 27.5122, held that the sworn testimony of a subscribing witness in probate
 
 *394
 
 proceedings that contradicts the recitations in the attestation clause of a will does not necessarily defeat the presumption that the will was executed in accordance with statutory formalities.
 
 [3]
 
 The
 
 Dettling
 
 Court reversed the grant of judgment notwithstanding the verdict and held that the jury, as the finder of fact, had a right to find that the instrument was attested and executed in accordance with the statute as stated in the attestation clause or to believe the contrary testimony of the subscribing witnesses.
 
 Dettling, supra
 
 at 339. As the Court noted, “Any other rule would . . . open the best of wills to defeat by fraud.”
 
 Id.
 
 The Court further stated:
 

 “Even where a subscribing witness denies the existence of certain facts necessary for the legal execution of the will, the presumption of regularity may prevail over such direct evidence. The subscribing witness, by acting as such, in effect formally declares that all the facts necessary to the legal execution of the will exist, and in advance, by acting as a subscribing witness, he has seriously discredited his subsequent denial of these facts under oath. It is, therefore, quite possible that the presumption that the necessary acts have been performed is not overcome by the adverse testimony of one or more of the subscribing witnesses, and a will may be admitted to probate although one or more of the subscribing witnesses testify adversely thereto. The testimony of the subscribing witnesses which denies the performance of one or more of the facts which are necessary to the validity of the will is, at best, to be received with caution, and to be viewed with suspicion.”
 
 [Id.
 
 at 340, quoting 2 Page On Wills (Lifetime ed), § 758, pp 471-473.]
 

 
 *395
 
 Similarly, in
 
 Utley, supra,
 
 a subscribing witness testified that when he signed the document the page was partially covered by a blank sheet of paper and the testator did not tell him that the document was his will. The witness could not see the testator’s signature, nor did he see the testator sign the will. The other subscribing witness testified that he signed the document in the presence of the testator and the other witness, who also signed in his presence and in the presence of the testator, but he did not remember seeing the testator sign or seeing the testator’s signature.
 
 Id.
 
 at 100. Finding that the issue was one of fact,
 
 id.,
 
 the Michigan Supreme Court reasoned:
 

 “[W]e know of no rule of law which makes the probate of a will depend upon the recollection or even the veracity of a subscribing witness. The law, for wise and obvious reasons, requires such instruments to be executed and attested with such precautions as will usually guard against fraud. But if the forgetfulness or falsehood of a subscribing witness can invalidate a will, it would be easy in many cases to use such artifices or corruption as would render the best will nugatory.”
 
 [Id.
 
 at 101, quoting
 
 Abbott v Abbott,
 
 41 Mich 540, 542; 2 NW 810 (1879).]
 

 Here, the probate judge, sitting as trier of fact, found that the execution of the codicil “appears to comply with the statute” and admitted the codicil to probate. In doing so, the judge implicitly found that there had been substantial compliance with the statutory requirements and that the questions raised by the testimony of William Clark were insufficient to overcome the presumption of validity created by the attestation clause.
 
 [4]
 
 Giving due regard to the special oppor
 
 *396
 
 tuxvity of the probate court to judge the credibility of the witnesses who appeared before it, see MCR 2.613(C), we find no clear error in these findings of fact.
 

 Affirmed.
 

 [1]
 

 The attorney hired to draft the new will testified that Percy Clark had expressed an intent to revoke his. 1985 will and to draft a new one that omitted Watmuf as a beneficiary.
 

 [2]
 

 The statutory definition of the term “will” includes a codicil. MCL 700.12(3); MSA 27.5012(3).
 

 [3]
 

 1948 CL 702.5, required that a will “be in writing and signed by the testator or by some person in his presence, and at his express direction and attested and subscribed in the presence of the testator by 2 more competent witnesses.”
 
 Arnson, supra
 
 at 486-487.
 

 [4]
 

 Section 122 of the Revised Probate Code provides, in pertinent part:
 

 
 *396
 
 (2) A beneficial devise made or given in a will to a subscribing witness thereto, is void, unless there are 2 other competent subscribing witnesses to the will. . . .
 

 (3) If the witness to whom a beneficial devise may have been made or given, would have been entitled to any share of the estate of the testator if the will were not established, then so much of the share that would have been distributed to the witness as would not exceed the devise made to him in the will shall be saved to him, and he may recover the same from the devisees named in the will in proportion to and out of the parts devised to them. [MCL 700.122; MSA 27.5122.]
 

 We note, in passing, that the related issues whether William Clark was competent to serve as a subscribing witness to the third codicil, given that he was a residuary beneficiary under the decedent’s 1985 will, and whether William’s beneficial devise under the decedent’s will is void because of his status as a subscribing witness to the decedent’s third codicil, were briefly raised by counsel below but not pursued. Nonetheless, we would note the general rule that a will and codicil are to be construed together as a single instrument, see
 
 In re Ives’ Estate,
 
 182 Mich 699, 704; 148 NW 727 (1914), and that, on these facts, the underlying purpose of the statutory provisions—to prevent fraud or the exertion of undue influence on the testator—would appear to us to be served by application of the statute. That is, had William Clark been successful in defeating the codicil’s admission to probate, his beneficial share under the will’s residuary clause would have been substantially greater. However, because we have held that the probate court did not err in admitting the third codicil to probate, we see no need to discuss this issue further.